William C. TAYLOR, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–479A106.

Court of Appeals of Indiana, Second District.

Sept. 25, 1980.

Rehearing Denied Nov. 10, 1980.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant William C. Taylor is appealing from his conviction of the offense of theft.

The facts most favorable to the State are as follows: At 8:45 p. m. on March 8, 1978, Paul V. Haag, an employee of J. C. Penney Co., Inc. at Washington Square, heard a security alarm sound in the hardware department stock room. Haag immediately ran to the stock room and heard a fire door click shut. Haag went through the door and saw a man getting into the front passenger seat of a station wagon. The man was carrying three (3) boxes which he put in the back seat. Haag followed the man to the car and leaned in the back window. He identified the three (3) boxes as containing Homelite chain saws sold at J. C. Penney's. Haag reached into the car and tried to grab the saws but the car pulled away. As Haag was attempting to remove the saws, the passenger turned and faced him. At trial Haag unequivocally identified appellant Taylor as this passenger.

Later Haag, who was the merchandising manager of the hardware department, ran a check on the saw inventory and discovered some Homelite chain saws were missing. To his knowledge, no one had given Taylor permission to exert control over the saws.

■ Taylor's first argument on appeal is that the evidence merely shows his presence at the scene of the crime.[1] This argument is specious. Haag testified he heard the alarms on the fire doors which exit from the stock room and ran to the fire exit. As he was running to the inside fire doors, he heard them click shut. As he went through these doors, he heard the outside fire doors click shut. Exiting these outside fire doors, he first observed Taylor carrying the saws and then get into the front passenger seat of the station wagon. This evidence clearly shows Taylor was not only present at the scene; he was actively involved in the crime.

■ Taylor also argues the evidence failed to establish ownership or control of the items stolen. Again, Taylor ignores the testimony of Haag, who identified the chain saws as the property of J. C. Penney Co.

Following Taylor's arraignment and release on bond, Taylor asked the investigating police officer to allow him to take a polygraph examination. A test date was set and Taylor appeared to take the test. The polygraph operator, Dave Lewis, advised Taylor of his *Miranda* rights. He then read Taylor a form entitled "Waiver of Objection to Use of Results of Polygraph." Taylor also read the form and signed it. The form read as follows:

"I, William Taylor, being fully and adequately advised and/or represented by counsel and understanding fully my right to remain silent, HEREBY EXPRESSLY WAIVE ANY AND ALL OBJECTIONS to the use of the results of a polygraph (lie detector) test which I am about to take.

"I UNDERSTAND FURTHER that the results of this polygraph (lie detector) test may be used in court against me or for me, that it may become an exhibit in any trial in which I may be involved.

"I FURTHER STIPULATE, UNDERSTAND AND AGREE that the person

---

1. Appellant's brief is devoid of any statement of the facts as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(5) and therefore, technically, the issue of sufficiency of the evidence is waived. However, we reach this issue because appellee's brief does provide a statement of the facts.

administering said polygraph (lie detector) test, may explain, analyze or discuss all or any portion of said test in open court, by interrogatories or by deposition. "I FURTHER UNDERSTAND that this is a waiver of any constitutional right or privilege [sic] I may now have or may claim at any time in the future which involves the use of the results of the polygraph (lie detector) test which I am about to take.

"I UNDERSTAND FURTHER that I have a right to remain silent and not take the test, that I have a right to the advice and consultation of counsel prior to my signing this document, that if I do not have funds to employ counsel the court will appoint counsel to advise me before I sign the document and that the results of this test, including the test itself and this waiver may be introduced into evidence in court either against me or for me."

Taylor was not represented by counsel prior to or during the examination and he was not specifically informed the results of the examination would be inadmissible if he did not waive his right to object.

█ Because he was not represented by counsel, Taylor contends the waiver was ineffective. We do not agree. Although an accused has the right to the advice and assistance of counsel, he also has the right to forego such representation. *Russell v. State*, (1978) Ind.App., 378 N.E.2d 872. Here Taylor requested to take the polygraph examination. He was advised of his right to counsel orally and in writing. He chose to proceed without counsel. He does not contend on appeal that his waiver of the right to counsel was involuntarily or unknowingly made. Therefore the lack of representation does not vitiate the waiver. *See Owens v. State*, (1978) Ind.App., 373 N.E.2d 913.

Taylor also argues the waiver was not valid because he was not specifically advised the results would not be admissible absent his waiver. He apparently contends

the Indiana Supreme Court in *White v. State*, (1978) Ind., 381 N.E.2d 481, mandated such an advisement. However, in *White*, the defendant argued the results of a polygraph examination could only be used in rebuttal and not in the State's case in chief. The court reiterated "some form of waiver is all that is required" for the admission of the results of a polygraph examination. In footnote 1 the court set forth the record of the waiver hearing to show the defendant did not make any reservation upon the use of the evidence at trial and had clearly waived the right to object. Although the record reveals the defendant was advised the test results were inadmissible absent the waiver, the court did not hold such advisement was a necessary part of "some form of waiver."

Recently in *Slagle v. State*, (1979) Ind. App., 393 N.E.2d 798, the Third District held that a waiver of rights form which read, in part, that the defendant agreed that the results may be made available to the proper authorities and further that the defendant had the right to remain silent and anything he said could be used against him in a court of law was not a valid waiver of his right to object to the introduction of the test results. The court stated, "The record fails to show that Slagle fully appreciated the fact that the results of the test would have been inadmissible had he not waived his right to object." *Slagle* at 801.

█ This case differs greatly from the fact situation before us. In *Slagle* the waiver form did *not* state that the defendant waived the right to object to the introduction into evidence of the test results or even that the test results would be introduced into evidence. The waiver form signed by Taylor states in pertinent part:

"[I] . . . HEREBY EXPRESSLY WAIVE ANY AND ALL OBJECTIONS to the use of the results of a polygraph (lie detector) test which I am about to take.

"I UNDERSTAND FURTHER that the results of this polygraph (lie detector)

test may be used in court against me or for me, that it may become an exhibit in any trial in which I may be involved. "I FURTHER STIPULATE, UNDERSTAND AND AGREE that the person administering said polygraph (lie detector) test, may explain, analyze or discuss all or any portion of said test in open court, by interrogatories or by deposition.

.    .    .    .    .

"I UNDERSTAND FURTHER . . . that the results of this test, including the test itself and this waiver may be introduced into evidence in court."

Clearly, Taylor was made aware he had a right to object to the admission of the test results by the mere fact he was asked to sign a waiver of objection to use of the results. He acknowledged he understood and agreed the test results could be introduced into evidence. We find Taylor's express waiver of any and all objections to the use of the test results was valid and enforceable against him.

■ Taylor also argues that a proper foundation was not laid for the admission of the test results. Lewis testified as to his training and experience as a polygraph operator, the techniques of polygraph examination, the conditions under which the test was taken and that he had tested the machine to ensure it was in proper working condition. This testimony was sufficient to establish a foundation for the admission of the test results. We do not agree with Taylor's argument that all the questions asked and the machine graphs were necessary to establish a foundation.

Taylor further contends the trial court erred in denying him the right to cross-examine Lewis on the validity of the polygraph examination as a proper scientific test.

■ We agree that where the results of the polygraph examination are offered into evidence the opposing party has the right to cross-examine the examiner as to:

"a. the examiner's qualifications and training;

"b. the conditions under which the test was administered;

"c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

"d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry."

*Owens v. State*, (1978) Ind.App., 373 N.E.2d 913, 915.

■ However, the record shows the court did not deny Taylor's right to cross-examination or improperly restrict such cross-examination. Taylor attempted to cross-examine Lewis as to his knowledge of the legal objection to the admission of test results and his knowledge concerning the holding in *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352. Obviously, this was not a proper method of exploring the limitations and possibilities of error in the techniques of polygraph examination. The trial court did not err in sustaining the State's objections to these questions.

Taylor's next argument is that the trial court erred in denying his motion for a continuance for the purpose of obtaining an expert to prepare a defense against the polygraph examination results.

He contends the State blatantly violated the discovery order by failing to produce the graphs and questions and because of this violation he was entitled to a continuance. This argument has no merit. The record discloses that the graphs and questions were not specifically requested by Taylor. Furthermore, the State maintained it was not aware these items had been preserved until the day of trial. The items were in the possession of Lewis, not the State. The State had timely provided the results of the test and had informed defense counsel it did not intend to introduce the graphs. Neither the questions nor graphs were introduced.

■ An application for a continuance is addressed to the sound discretion of the

trial court. The court's exercise of its discretion will not be reviewed on appeal unless it is shown that the court abused its discretion to the injury of the complaining party, *Gregory v. State*, (1972) 259 Ind. 295, 286 N.E.2d 666, *Butler v. State*, (1978) Ind. App., 372 N.E.2d 190. Under the circumstances present in this case, we cannot say the court abused its discretion. Defense counsel knew at least two months prior to trial that Taylor had undergone a polygraph examination. He was given a copy of the results and was told the State intended to use the evidence at trial. He was also told the graphs would not be used. Clearly, Taylor was not surprised by the events at trial. We believe that counsel, in the exercise of due diligence, could have obtained expert advice and adequately prepared a defense prior to trial based on the information available to him. *See Cooper v. State*, (1972) 259 Ind. 107, 284 N.E.2d 799; *Walker v. State*, (1970) 255 Ind. 65, 262 N.E.2d 641.

■ Taylor further argues the trial court erred in refusing various tendered instructions and in giving the State's instruction concerning polygraph examinations. However, Taylor has not set forth in his appellate brief any of the verbatim instructions.

Indiana Rules of Appellate Procedure, A.P. 8.3(A)(7) provides:

"When error is predicated on the giving or refusing of any instruction the instruction shall be set out verbatim in the argument section of the brief with the verbatim objection, if any, made thereto. Any error alleged in the motion to correct error not treated as herein directed shall be deemed waived."

Taylor, therefore, has waived any error in the giving or refusing of these instructions.[2] *Spaulding v. State*, (1978) Ind., 373 N.E.2d 165.

■ Taylor's last argument concerns the admission of two exhibits introduced by the State which were not produced pursuant to the discovery order. The State introduced

a certificate of incorporation for J. C. Penney Company and a copy of the registration of the station wagon showing it was registered to Minnie Hardy.

Taylor moved for a continuance to rebut the exhibits because they had not been produced pursuant to the discovery motions. Taylor has made no attempt to show what evidence he could have obtained to rebut the exhibits if a continuance had been granted or in what way he was surprised or harmed by their admission at trial. Taylor himself testified that the car he was in at Washington Square belonged to his mother, Minnie Hardy. We conclude that the State's failure to produce these exhibits and the trial court's denial of a continuance did not prejudice Taylor's ability to prepare a defense.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

2. We are aware that this paragraph of A.P. 8.3(A)(7) was inadvertently omitted in the Burns Indiana Statutes 1980 replacement edition. However this appeal was fully briefed prior to publication of the 1980 edition. Therefore, Taylor could not have been misled by this error to believe that it is no longer necessary to set forth the instructions.