Bradley **ATKINSON**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 27S00–9010–CR–650.

Supreme Court of Indiana.

Dec. 4, 1991.

James T. Beaman, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction under cause number 27D01–8811–CF–65 for Murder for which appellant received forty (40) years, enhanced by twenty (20) years for aggravating circumstances; and nine counts of Forgery, Class C felonies, for which he received a sentence of five (5) years, enhanced by three (3) years for aggravating circumstances, the sentences to run concurrently with each other and consecutively to the murder sentence.

Under cause number 27D01–8810–CF–43, appellant was found guilty of two counts of Theft, Class D felonies, for which he received two (2) years, enhanced by two years for aggravating circumstances, the sentences to run concurrently with each other but consecutively to the murder sentence. Appellant also was sentenced to one (1) year for Criminal Mischief, to run concurrently with the theft charges but consecutively to all other charges.

The facts are: On August 15 and 28, 1988, Darwin Walker reported to police that tools had been stolen from his garage and from inside his truck which was parked at his residence. On October 6, 1988, Walker reported to police that someone had thrown a pipe and a shovel through the window of his home. On the evening of October 7, Walker observed as appellant walked past the house and threw a piece of asphalt which shattered the windshield of his truck. Appellant disregarded Walker's order to stop. Appellant was recognized by Walker as a neighbor who was living with his stepfather, Ben Frazee, the homicide victim in this case.

In a search of appellant's home, many of Walker's tools were recovered. On November 14, 1988, Teresa Grosswiler drove appellant to a bank to cash checks which allegedly were sent to appellant by his mother. Julie Egge, a teller at the bank, cashed three checks which were payable to appellant. The payee of the checks was Ben Frazee. Egge doubted that Frazee had signed the checks because his name was misspelled. Teresa Riggs, the head teller, compared the signature on the checks to Frazee's signature on a signature card and determined that the signatures were dissimilar.

On November 17, 1988, Riggs telephoned Frazee to determine if he had written checks to the defendant. Frazee advised that he did not issue the checks and made an appointment with her to close the checking account. On the afternoon of November 17, appellant telephoned police to report that his stepfather had been beaten. Appellant advised the police that after returning home from a walk he found Frazee lying in his bedroom with serious injuries to his head. An axe was discovered near the body. Although appellant indicated to police that he thought someone had broken into the residence, police officers found no evidence of forced entry. Appellant then was transported to police headquarters for questioning.

After being advised of his *Miranda* rights, appellant stated that on November 16 he accompanied Frazee to a restaurant where Frazee was paid $160 by a rental-property tenant. Appellant also stated that he had $360 in cash because his mother had wired money to him through Western Union. Appellant denied any involvement in the crime. Appellant then entered into a written agreement with the prosecuting attorney that he would take a polygraph examination and that the results thereof could be introduced in evidence at trial.

The prosecutor agreed that if the polygraph test indicated appellant was telling the truth he would not be prosecuted. Officer Randall Black administered the test and determined that appellant was not truthful in his responses concerning the death of Frazee. In addition, appellant signed a consent to search form which, among other things, permitted police officers to confiscate his clothing. Bloodstains were found on appellant's clothing which tests showed were not his blood; however, no tests were made to determine whether it was the blood of the decedent.

When questioned about the checks, appellant told the officers that Frazee instructed him to write and cash the checks. The police officers discovered that appellant's mother had never wired money to him.

■ Appellant claims the trial court erred in admitting in evidence the conversation between Teresa Riggs and the decedent in which the decedent stated that he had not written the checks to appellant. The State readily agreed that the response made by Frazee was hearsay. However, the State argued that although it was hearsay it should come into evidence under an exception to the hearsay rule because it tended to show the state of mind of Frazee upon receiving the information that appellant had cashed checks on his bank account. Frazee had indicated to the teller that he would take care of the matter.

■ The contention of the State here was that the response was admissible not for the truth of the statement by Frazee that he had not issued the check, but rather for the fact that information had been given to Frazee by the bank which caused him to confront appellant. Evidence of happenings near in time and place which complete the story of a crime are admissible under the theory of *res gestae. See Jones v. State* (1986), Ind., 500 N.E.2d 1166.

■ Even assuming that the statement by Frazee was improperly admitted, there is ample independent evidence in this record from which the jury could determine that appellant in fact had forged checks on

Frazee's account. Julie Egge, the teller who cashed the checks, recognized that Frazee's name was misspelled. The head teller, Teresa Riggs, compared the signature on the checks to Frazee's signature on a signature card and determined that they were not the same.

In addition, the checks and samples of the handwriting of appellant and the victim were examined by a documents analyst who determined that Frazee did not write the checks. Thus the statement by Frazee, even if improperly admitted, was only cumulative evidence of the fact which was clearly proven by other evidence. If error, it was harmless error. *Carter v. State* (1986), Ind., 501 N.E.2d 439.

■ Appellant claims there was insufficient evidence to support the conviction for theft. After Walker had discovered that items were missing from his premises and from his truck, Frazee consented to a search of his premises where several items stolen from Walker were found. Appellant argues that this evidence merely showed an opportunity to commit the crime, which is insufficient to establish guilt, citing *Robertson v. State* (1952), 231 Ind. 368, 108 N.E.2d 711, *Steffler v. State* (1952), 230 Ind. 557, 104 N.E.2d 729 and *Osbon v. State* (1938), 213 Ind. 413, 13 N.E.2d 223.

However, we cannot agree with appellant's observations that the above cases are applicable to his situation. There is ample evidence in this record from which the jury could determine that appellant in fact was the person who took the items from Walker's premises and transported them to the home of his stepfather.

■ Appellant also claims there is insufficient evidence to support the murder conviction. Again, he contends that the evidence merely gives rise to a suspicion that he might have been the murderer, citing *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658. There is ample evidence in this record from which the jury could conclude that the victim was having difficulty with appellant, and when the bank informed him that appellant had been cashing checks on his account, the victim con-

fronted appellant and that confrontation led to his death.

Although appellant attempted to convince police that someone had broken in and killed his stepfather while he was away from home, the police found no evidence of a break in. Bloodstained clothing of appellant was recovered. Although the evidence linking appellant to the killing of the decedent is circumstantial, circumstantial evidence alone is sufficient where a reasonable inference may be drawn from that evidence to support the verdict. *Jones v. State* (1985), Ind., 485 N.E.2d 627; *Ballard v. State* (1982), Ind., 438 N.E.2d 707. There is ample evidence in this record to support the jury's verdict.

■ Appellant contends his motion to suppress evidence that he had signed the *Miranda* warning, his agreement to take a polygraph test, the results of the polygraph test, the copy of the polygraph chart, appellant's transcribed statement dated November 17, 1988, and his signed consent to search his premises should have been sustained. He based his motion to suppress on the fact that he was not represented by counsel at the time the statements and agreements were made and that he was incompetent to make such statements and waivers.

Appellant argues that he is of low mentality, that he had surgery for a brain aneurysm, and that following surgery he had difficulty in remembering things. Cathy Dupouy, a therapist who had treated appellant following his operation, observed that he had difficulty in recalling details but that he could understand and retain information if it was put to him in a simple fashion. When the prosecuting attorney read the questions posed to appellant by the police officers, Dupouy stated, "I think those are simple, relatively simple statements. I don't know how you could get them much clearer."

Appellant had entered a plea of not guilty by reason of insanity. As a result, the court appointed Dr. Day, a psychologist, and Dr. Musselman, a psychiatrist, to examine appellant as to his competency to stand trial and his competency at the time the crimes were committed. Both Dr. Day and Dr. Musselman found appellant to be of low intelligence. However, they stated he in fact was sane and capable of comprehending the charges against him and of assisting in his defense. They both opined that he was sane at the time of the commission of the crimes.

Although appellant is unquestionably of low mentality, there is no evidence that police officers took advantage of his condition. To the contrary, it is apparent that the questioning of appellant was conducted in a very simple and understanding fashion. His rights were stated correctly and simply to him. Appellant's contract with the prosecuting attorney to take the polygraph test was couched in clear and concise language and fully explained to him.

The circumstances under which appellant gave his statements give rise to a question of fact to be determined by the trial court and should not be reweighed by this Court. *Kizer v. State* (1979), 271 Ind. 277, 392 N.E.2d 466. There was ample evidence in this record to support the ruling of the trial court denying appellant's motion to suppress.

■ Appellant also claims his stipulation to take the polygraph test was not sufficient to permit the result to be admitted in evidence. It is the prerogative of an accused to take a polygraph examination. When an accused executes a waiver, he cannot then complain that the State has violated his right against self-incrimination. *Willis v. State* (1978), 268 Ind. 269, 374 N.E.2d 520.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER and DICKSON, JJ., dissent without separate opinion.