**Michael Lee KOCHERSPERGER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 10A01–9902–CR–53.**

Court of Appeals of Indiana.

March 24, 2000.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-defendant Michael Lee Kochersperger ("Kochersperger") appeals from his convictions for one count of child molesting/deviate sexual conduct,[1] a Class B felony, and one count of child molesting/fondling,[2] a Class C felony.

We affirm in part and remand in part for further proceedings.

### Issues

Kochersperger presents the following issues for our review:

(1) whether the trial court erred when it determined that the seven-year-old victim was competent to testify at trial;

(2) whether the trial court erred when it denied his motion to suppress evidence obtained through a polygraph examination and post-testing interrogation; and

(3) whether his convictions for child molesting/deviate sexual conduct and child molesting/fondling are barred by the constitutional protections against double jeopardy.

### Facts and Procedural History

Kochersperger lived with his wife, Rebecca Kochersperger ("Rebecca"), and their two daughters, T.K. and A.K.,[3] in Jeffersonville, Indiana. Kochersperger stayed at home with T.K. and A.K. during the day while Rebecca worked. In early 1996, Kochersperger made T.K. touch his penis with her hand while they were in an upstairs room; during this same incident he also made T.K. lick and suck his penis. T.K. subsequently told her mother that she had a "secret" Kochersperger would not allow her to reveal. When T.K. ulti-

---

1. *See* IND.CODE § 35–42–4–3(a); *see also* IND. CODE § 35–41–1–9(1) (defining deviate sexual conduct as an act involving the sex organ of one person and the mouth or anus of another person).

2. *See* IND.CODE § 35–42–4–3(b) (fondling or touching or submitting to the same).

3. T.K. has a birthdate of June 29, 1991. A.K. has a birthdate of January 6, 1994.

mately disclosed the secret to her mother, Rebecca notified Child Protective Services ("CPS").

On March 24, 1997, a CPS caseworker interviewed T.K. regarding the incident. Finding T.K.'s statement to be credible, the caseworker forwarded the information on to Detective Charles Thompson ("Detective Thompson") of the Jeffersonville Police Department. Following a brief telephone conversation, Kochersperger agreed to meet with Detective Thompson at his office on April 11, 1997. During their meeting, Detective Thompson did not place Kochersperger under arrest. However, he did review with Kochersperger an advice of rights form containing *Miranda* [4] warnings and including an advisement of his right to counsel. Kochersperger read and signed the advice of rights form. The meeting culminated in Kochersperger signing an agreement with the prosecutor to undergo a polygraph examination; the agreement stipulated that the results of the examination would be admissible in any subsequent trial. A test date was set for May 6, 1997, and Kochersperger appeared to take the polygraph examination as agreed.

Officer Gary Hall ("Officer Hall"), a polygraph operator with the Clarksville Police Department, conducted the examination. Immediately prior to administering the examination, Officer Hall asked Kochersperger whether he recalled reading and signing the stipulation on April 11, 1997; Kochersperger responded that he did. Nevertheless, Officer Hall reviewed the document with Kochersperger, along with a certificate of understanding regarding polygraph examinations, which Kochersperger also signed.

Thereafter, Officer Hall conducted three separate polygraph examinations and concluded that Kochersperger had been untruthful during all three of them. When Officer Hall confronted Kochersperger with the results during a post-testing interrogation, Kochersperger admitted that T.K. had touched his penis and that his penis had been in her mouth.[5]

The State charged Kochersperger in relevant part as follows: [6]

## COUNT I

Between January 1996 and June 30, 1996, [Kochersperger] did submit to deviate sexual conduct by having [T.K.], a child under fourteen (14) years of age, place her mouth on his penis....

## COUNT III

Between January 1996 and June 30, 1996, [Kochersperger] did submit to any fondling or touching by [T.K.], a child under fourteen (14) years of age, with intent to arouse or to satisfy the sexual desires of either [T.K.] or [Kochersperger].

Prior to trial, Kochersperger moved to suppress the evidence obtained through his polygraph examination and post-testing interrogation; the trial court denied his motion. A jury trial was conducted on December 15 and 16, 1998, after which the jury found Kochersperger guilty on Counts I and III. The trial court "merged" Kochersperger's conviction under Count III with his conviction under Count I and imposed an enhanced sentence of fifteen years on Count I only, with five years thereof suspended.

---

**4.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Kochersperger claimed that T.K. had walked in on him while he was in the shower, touched his penis, and asked if it was a popsicle; when he said no, she put her mouth on it.

**6.** Count II alleged that Kochersperger molested his other daughter, A.K. The trial court granted Kochersperger's motion for directed verdict as to this count, and it is not an issue on appeal.

### Discussion and Decision

#### I. Competency of T.K. to Testify at Trial

Kochersperger first asserts that the trial court should not have permitted T.K., who was seven years old at the time of trial, to testify. He specifically challenges T.K.'s competency to testify and argues that her responses to questions posed during a previous competency hearing did not provide the trial court with sufficient basis to infer that she "understood the differences between telling a lie and telling the truth or knew she was under a compulsion to tell the truth."

 Kochersperger has waived consideration of this issue on appeal because he offered no objection to the trial court's ruling at the conclusion of the competency hearing and likewise failed to offer any objection when T.K. was called as a witness at trial. "Timely objection should be made to any improprieties that may occur during the course of a trial so that the trial judge may be informed and may take effective action to remedy the error or grievance complained of." *Jackson v. State,* 485 N.E.2d 144, 145 (Ind.Ct.App.1985) (quoting *Morgan v. State,* 243 Ind. 315, 320–21, 185 N.E.2d 15, 17–18 (1962)), *trans. denied.* A defendant's failure to object to a child's testimony acts as a waiver of any question of the competency of the child as a witness. *Jackson,* 485 N.E.2d at 145 (child molesting case).

#### II. Admissibility of Polygraph Examination and Post-testing Interrogation

Kochersperger next challenges the trial court's denial of his motion to suppress evidence obtained through the polygraph examination and post-testing interrogation. In particular, he makes two contentions: (1) that his Sixth Amendment right to counsel was violated because he was not represented at the time the examination was administered and the interrogation was conducted; and (2) that his decision to sign the polygraph stipulation was based on misrepresentations and improper inducement by police.

#### A. Right to Counsel

 It is well settled in Indiana that absent a proper waiver or stipulation by the defendant and prosecuting attorney, the results of a polygraph examination are not competent evidence and are inadmissible in a criminal prosecution. *Casada v. State,* 544 N.E.2d 189, 198 (Ind.Ct.App. 1989). In *Owens v. State,* 176 Ind.App. 1, 3–4, 373 N.E.2d 913, 915 (1978), this court first adopted from the Arizona Supreme Court four prerequisites that must be met before the results of a polygraph examination can be admitted into evidence. *See Arizona v. Valdez,* 91 Ariz. 274, 371 P.2d 894, 900 (1962); *see also Pavone v. State,* 273 Ind. 162, 402 N.E.2d 976 (1980) (approving *Owens* decision). The first prerequisite, and the only one at issue here,[7] is "that the [prosecuting] attorney, defendant *and his counsel* . . . all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state." *See Owens,* 176 Ind.App. at 3, 373 N.E.2d at 915 (quoting *Valdez,* 371 P.2d at 900) (emphasis added).

 Kochersperger makes much of the fact that his stipulation was not signed by defense counsel because he had no representation at that time and argues that the first prerequisite set forth in *Owens* was therefore not met. However, Kochersperger was fully advised of his right to counsel prior to executing the stipulation on April 11, 1997, and waived such right by signing the advice of rights form provided

---

7. Kochersperger concedes that the other three prerequisites concerning the polygraph examiner's qualifications and testing conditions; defendant's right to cross-examine the examiner at trial; and instructions limiting the use of the examiner's testimony, were met. *See Owens,* 176 Ind.App. at 3–4, 373 N.E.2d at 915.

by Detective Thompson. Kochersperger chose to sign the stipulation without counsel and does not contend on appeal that his waiver of the right to counsel was involuntarily or unknowingly made. *See Taylor v. State,* 409 N.E.2d 1246, 1249 (Ind.Ct.App. 1980) (holding that defendant's lack of counsel prior to polygraph examination did not vitiate the effect of the stipulation; defendant was advised of right to counsel, chose to proceed without counsel, and did not contend that waiver of his right to counsel was involuntarily or unknowingly made). Thus, he cannot now complain that his right to have counsel present when he signed the stipulation was impinged upon, nor can he challenge the validity of the stipulation for lack of defense counsel's signature. *See id.* (holding that although an accused has a right to advice and assistance of counsel, he also has right to forego such representation); *see also Owens,* 176 Ind.App. at 3, 373 N.E.2d at 915 n. 2 (noting that "defendant's counsel would be required to sign the stipulation only when a defendant's right to counsel has already attached and where the defendant has not waived such right to counsel").[8]

■ Kochersperger further contends that his right to counsel under the Sixth Amendment was violated when the polygraph examination and post-testing interrogation were conducted without the presence of defense counsel. Specifically, he urges that such examinations and interrogations are "critical stages" of a criminal proceeding that necessarily trigger a defendant's Sixth Amendment right to counsel.

■ The Sixth Amendment provides that an accused has a right to counsel "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Jones v. State,* 655 N.E.2d 49, 54 (Ind.1995) (quoting *U.S. v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967)). Such a stage is considered a "critical stage," that is, any stage in a criminal proceeding where incrimination may occur or where the opportunity for effective defense must be seized or be foregone. *Greenlee v. State,* 477 N.E.2d 917, 920 (Ind.Ct.App. 1985).

In *Greenlee,* a panel of this court held that "[t]he polygraph examination and the post-test interrogation constituted a critical stage of the proceedings, triggering the Sixth Amendment right to counsel." *Id.* (nevertheless affirming trial court's decision because Greenlee had waived his right to counsel). This is not to say that *all* such examinations and subsequent interrogations, without exception, are deemed critical stages of a criminal proceeding. Rather, as another panel of this court clarified in *Callis v. State,* 684 N.E.2d 233, 238 (Ind.Ct.App.1997), we must "distinguish between pre- and post-arrest/indictment proceedings." *See Little v. State,* 475 N.E.2d 677, 683 (Ind.1985) (observing that commencement of a prosecution is governed by IND.CODE § 35–34–1–1, which provides that the filing of an information or indictment begins the formal criminal process).

The polygraph examination and post-testing interrogation at issue in *Greenlee* occurred during pre-trial plea negotiations and thus *after* the initiation of criminal

---

**8.** Kochersperger appears to claim that the issue of whether defense counsel's signature is required on a stipulation is unresolved. In so doing, he points to our supreme court's decision in *Willey v. State,* 712 N.E.2d 434, 439 n. 3 (Ind.1999) ("This Court's opinion in *Sanchez [v. State,* 675 N.E.2d 306 (Ind.1996)] does not specifically note the role of defense counsel in the stipulation before it."). While *Sanchez* reiterated the four conditions for ad-

mitting polygraph evidence first identified in *Owens,* 176 Ind.App. at 3–4, 373 N.E.2d at 915, the question of whether defense counsel's signature is required on a stipulation is not unresolved. As noted above, defense counsel's signature is necessary "only when a defendant's right to counsel has already attached and where the defendant has not waived such right to counsel." *See Owens,* 176 Ind.App. at 3, 373 N.E.2d at 915 n. 2.

proceedings and the attachment of Greenlee's right to counsel. *See Greenlee*, 477 N.E.2d at 919; *see also Taylor*, 409 N.E.2d at 1249 (noting that defendant was advised orally and in writing of his right to counsel prior to taking a polygraph examination conducted after defendant's arraignment and release on bond, but that he had waived this right). The examination and post-testing interview at issue in *Callis*, on the other hand, occurred *before* the commencement of criminal proceedings and thus did not constitute critical stages in a prosecution requiring the presence of counsel. *Callis*, 684 N.E.2d at 238 (concluding that exclusion of defense attorney from polygraph examination and post-testing interview did not violate defendant's right to counsel); *see also Casada v. State*, 544 N.E.2d at 199 (concluding that defendant's lack of counsel at signing of stipulation agreement and during polygraph examination conducted prior to arrest did not derogate defendant's right to a fair trial).[9]

Here, Kochersperger had not been arrested, arraigned, or indicted at the time he signed the agreement and stipulation, *see Casada*, 544 N.E.2d at 198, nor had he been so at the time the polygraph examination and post-testing interrogation were conducted, *see Callis*, 684 N.E.2d at 238. As such, the examination and interrogation did not constitute critical stages of a criminal proceeding because criminal proceedings had not yet commenced; likewise, Kochersperger's right to counsel had not yet attached. *See id.* at 238 and 238 n. 8 (stating that "[w]e find no support for the assertion that the right to counsel can attach earlier than the initiation of criminal proceedings" and observing that "event occurring prior to the initiation of criminal proceedings may only be challenged on due process grounds, which is independent of any right to counsel claim"). Kochersperger was not deprived of his Sixth Amendment right to counsel, and the trial court did not err when it denied his motion to suppress on such grounds.[10]

9. Kochersperger claims that "[o]pinions from our Court of Appeals reflect the courts are not in agreement on this issue [of whether polygraph examinations and post-testing interrogations constitute critical stages of a criminal proceeding]." We would not characterize the decisions of *Callis, Casada,* and *Greenlee* as being in conflict. Rather, *Callis* merely clarified the general rule set forth in *Greenlee* and reiterated in *Casada,* thereby limiting its application to "post-arrest/indictment proceedings."

10. Our conclusion in this case, however, should not be interpreted to mean that all polygraph examinations and post-testing interrogations may be conducted without defense counsel present or without at least advising a suspect of his right to have such representation. Rather, the Fifth and Fourteenth Amendments guarantee a suspect the right to the presence and advice of counsel during custodial interrogation by the police. *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind. 1995). Clearly, "a person who has been 'taken into custody or otherwise deprived of his freedom of action in any significant way' must, before being subjected to interrogation by law enforcement officers, be advised of his rights to remain silent and to the presence of an attorney and be warned that any statement he makes may be used as evidence against

him." *Id.* (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Statements elicited in violation of this rule are generally inadmissible in a criminal trial. *Id.* Therefore, where a polygraph examination is conducted while the suspect is in custody and where the police interrogate the suspect regarding the test results, he must first be advised of his right to counsel and be given the opportunity to forego such representation. *See id;* see also *Pennsylvania v. Muniz,* 496 U.S. 582, 600–01, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) ("interrogation" for purposes of *Miranda* analysis includes express questioning and words or actions that, given the officer's knowledge of any special susceptibilities of the interviewee, the officer should know are reasonably likely to have the force of a question on the person being questioned).

Here, we can discern no violation of due process rights under the Fifth and Fourteenth Amendments requiring the suppression of evidence obtained through the polygraph examination and post-testing interrogation. Indeed, Kochersperger acknowledges that he was not in custody when he submitted to the polygraph examination and post-testing interrogation and concedes that *Miranda* warnings were not required. Our review of the record

## B. Validity of Stipulation

 Kochersperger also contends that his decision to sign the polygraph stipulation was based on misrepresentations and other improper inducements by police. The stipulation is a contract between the State and Kochersperger. *See Atkinson v. State,* 581 N.E.2d 1247, 1250 (Ind.1991). As such, contract principles control its use and interpretation, *Willey v. State,* 712 N.E.2d 434, 440 (Ind.1999), including the well-settled precept that a contract must not be the product of misrepresentation. *Park 100 Investors, Inc. v. Kartes,* 650 N.E.2d 347, 349 (Ind.Ct.App.1995) (holding that where one employs misrepresentation to induce a party's obligation under a contract, one cannot bind that party to the terms of the agreement).

Kochersperger claims that Detective Thompson gave him "the impression, prior to signing the stipulation, that if he passed [the polygraph examination] no charges would be filed," and urges that it "would seem obvious the opportunity to avoid criminal prosecution would be a strong incentive for an individual to agree to take a polygraph examination." He further alleges that Detective Thompson advised him that he would not be allowed to see his children unless he agreed to take the polygraph examination.

 The circumstances under which Kochersperger signed the stipulation presented a question of fact that was to be determined by the trial court and should not be reweighed by this court. *See Atkinson,* 581 N.E.2d at 1250. Detective Thompson flatly denied that he ever told Kochersperger he would be prohibited from seeing his children, and both he and Officer Hall testified that they reviewed the stipulation with Kochersperger at length to insure his full comprehension of and cooperation in submitting to the polygraph examination. Indeed, Kochersperger signed a certificate of understanding which stated that he was "under no force, coercion, or threats of any type to submit to a polygraph examination, or to sign either this Certificate or the attached ... Stipulation." His appeal invites us to reweigh the evidence and assess the credibility of the witnesses, tasks not within our prerogative on appeal. *Cf. Lewis v. State,* 272 Ind. 365, 368, 397 N.E.2d 983, 985 (1979) (holding that admissibility of a confession made after an aborted polygraph examination should be reviewed as a sufficiency matter and that trial court's ruling as to the admissibility of a confession based on conflicting evidence would not be disturbed). Accordingly, we find no error in the trial court's denial of Kochersperger's motion to suppress evidence obtained through the polygraph examination and post-testing interrogation.

## III. Double Jeopardy

Finally, Kochersperger argues that his convictions for child molesting/deviate sexual conduct (Count I) and child molesting/fondling (Count III) are barred by constitutional protections against double jeopardy and specifically, the proscription against multiple punishments for the same offense. The State counters that Kochersperger was not subjected to double jeopardy because the trial court "merged" his two convictions and did not impose any sentence on Count III.

 This court has held that a conviction even without a sentence is in violation of double jeopardy and must be vacated. *Abron v. State,* 591 N.E.2d 634, 636–37 (Ind.Ct.App.1992). While the record reflects that the trial court "merged" Count III with Count I and sentenced Kochersperger only on Count I, it entered judgment of conviction on both counts. In so doing, however, the trial court noted

confirms as much, where Officer Hall testified that he advised Kochersperger he was not in custody, that he was not under arrest, that he was free to leave, that he was not required to take the polygraph examination, and that he "[could] get up and walk out of this door at any time[.]"

that "Counts I and III ... arose out of the same factual situation. There was no time differentiation at least in terms of the evidence presented, and so therefore I am going to merge the Class C offense with the Class B offense." It is clear from the trial court's sentencing remarks that it did not intend to punish Kochersperger twice for the same offense in violation of double jeopardy principles and attempted to avoid such a result through "merger." Nevertheless, the trial court should have vacated the conviction on Count III instead of merely "merging" it into Count I. *See Redman v. State,* 679 N.E.2d 927, 932 (Ind.Ct.App.1997) (concluding that vacating the lesser offense which would have "merged" into the greater offense would have been the more appropriate resolution). Accordingly, we remand to the trial court with instructions to vacate Kochersperger's child molesting/fondling conviction under Count III. In all other respects, the trial court is affirmed.

Affirmed in part and remanded in part with instructions.

NAJAM, J., and ROBB, J., concur.