

IN THE

# Court of Appeals of Indiana

Anthony Graff,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jan 28 2025, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

January 28, 2025

Court of Appeals Case No.
23A-CR-2546

Interlocutory Appeal from the Dearborn Circuit Court

The Honorable F. Aaron Negangard, Judge

Trial Court Cause No.
15C01-2208-FC-1

---

**Opinion by Judge Bradford**

Judges Bailey and Foley concur.

**Bradford, Judge.**

# Case Summary[1]

In August of 2020, authorities received a report that Anthony Graff had sexually abused two of his step-grandchildren several years previously. A detective with the Aurora Police Department contacted Graff, who agreed to speak with the detective. Following the discussion, Graff agreed to return for a polygraph examination, which he did. After Graff was informed of his right to counsel, orally and in writing, he executed a written waiver of that right, submitted to the examination, was told that he had failed the polygraph examination, and made incriminating statements. The State charged Graff with several crimes, and he moved to suppress the incriminating statements he had made to police following the polygraph examination. The State filed a motion in limine to exclude evidence related to the polygraph examination and/or expert testimony regarding the accuracy of polygraph examinations. The trial court denied Graff's motion to suppress, granted the State's motion in limine, and certified the case for interlocutory appeal. Graff contends that the trial court abused its discretion in denying his motion to suppress and in granting the State's motion in limine. Because we disagree with Graff's first contention but agree with his second, we affirm in part, reverse in part, and remand with instructions.

---

[1] We held oral argument in this case on December 11, 2024, in the Court of Appeals of Indiana Courtroom in Indianapolis. We wish to commend counsel for the high quality of their oral presentations.

## Facts and Procedural History

On August 31, 2020, the Dearborn County Sheriff's Department received a report of child molestation, in which Graff was identified as the perpetrator. The report was relayed to Aurora Police Detective Vernon McBride, who interviewed the children's mother and one of the two children involved, both of whom had grown to adulthood since the alleged abuse. The two alleged victims said that Graff had, on various occasions, made them touch his penis, exposed his chest to them while rubbing it, and touched one alleged victim's breast. Graff had been the alleged victims' step-grandfather at the time.

Detective McBride interviewed Graff at the Aurora Police Department on the afternoon of September 9, 2020. Detective McBride showed Graff into an interview room, explaining that he was closing the door for privacy and that Graff was not in custody and could leave whenever he liked. Detective McBride also said that he "d[id]n't have to do this" because Graff was not under arrest, but Detective McBride wanted to explain Graff's *Miranda*[2] rights to him as a matter of routine. Ex. 2 at 14:01:18. Detective McBride explained Graff's *Miranda* rights, and Graff signed a form stating that he wanted to talk to Detective McBride. Detective McBride explained that the alleged victims had come forward with allegations that Graff had abused them years ago. Detective McBride explained several specific allegations that the alleged victims had

---

[2] *Miranda v. Arizona*, 384 U.S. 463 (1966).

made; Graff generally denied them or indicated that the incidents could be explained as having been accidental or the result of misunderstandings.

[4] Detective McBride discussed the possibility of Graff taking a polygraph test, and Graff indicated that he was willing to do so. After Detective McBride told Graff that polygraphs were completely voluntary and that the decision to take one belonged entirely to Graff, he indicated twice more his willingness to submit to the examination. Detective McBride scheduled a polygraph examination for Graff for September 17, 2020, to be conducted by Detective Garland Bridges of the Dearborn County Sheriff's Department.

[5] On September 14, 2020, or three days before the scheduled test, Graff called Detective McBride and said that "I'm needing some legal representation" and "I'm needing some counseling" about the test. Ex. A at 0:12–18. Detective McBride told Graff that he had the right to be represented, and when Graff replied that he could not afford a lawyer, Detective McBride explained that because Graff had not been charged with anything "that would be something you would have to petition the court for." Ex. A at 0:34–37. Detective McBride asked if Graff wanted to cancel the polygraph appointment set for the upcoming Thursday. Graff replied, "I think I would need some representation there on my behalf." Ex. A at 0:57. Detective McBride explained that "if or when" Graff was charged with a crime he could ask the court for an appointed lawyer, but that obtaining counsel before then would be Graff's responsibility. Ex. A at 1:20–21. Graff said, "I think I better talk to somebody first." Ex. A at 1:51–52. Detective McBride said, "Well, I mean, again, that's your right," and

observed that he had looked at the polygraph as a tool to use in the investigation, and if Graff were to pass the polygraph, "that says a whole lot right there[.]" Ex. A at 1:54–55, 2:16–17. Graff said, "Well, let's go ahead and do that Thursday and we'll find out the outcome then, which I know what the outcome's gonna be." Ex. A at 2:21-29. Detective McBride asked what outcome Graff expected, and Graff said, "that I'm innocent." Ex. A at 2:36. Detective McBride reminded Graff that the polygraph is "completely voluntary" and that Graff could not be made to take it. Ex. A at 2:43. Detective McBride reminded Graff that if he failed the polygraph, "obviously that's not a good thing for you." Ex. A at 3:06–08. Graff replied, "I understand that." Ex. A at 3:11. Graff said he would take the polygraph as scheduled.

[6] On the morning of September 17, 2020, Graff arrived at the Dearborn County Sheriff's Department for the polygraph examination. After reading Graff his *Miranda* rights and obtaining a written waiver, Detective Bridges administered the polygraph test and determined that Graff's reactions had produced scores greater than the minimum level indicating deception. Detective McBride informed Graff that he had failed the polygraph. In an interview following the polygraph test, Graff made several incriminating statements. After approximately thirteen minutes of talking with Detective Bridges and taking a cigarette break, Graff said, "I think I need to get a good lawyer[,]" and Detective Bridges ended the interview. Ex. 12 at 13:18.

[7] On August 15, 2022, the State charged Graff with four counts of Class D felony child molesting and two counts of Class D felony child solicitation. On February 17, 2023, Graff moved to suppress the statements he had made to police during the interview following the polygraph. On September 5, 2023, the trial court denied Graff's motion to suppress. On September 12, 2023, the State moved for orders in limine to (1) exclude evidence of the administration of the polygraph examination and any expert testimony related to it and (2) exclude testimony by any expert on polygraph examinations and police interrogation as a sanction for discovery violations by Graff. The trial court granted the State's first motion in limine and took the second under advisement. On September 28, 2023, the trial court granted Graff's motion to certify for interlocutory appeal its denial of his motion to suppress and its grant of the State's motion in limine. We accepted jurisdiction.

## Discussion

### I.    Motion to Suppress

[8] "We review a trial court's denial of a motion to suppress in a manner similar to other sufficiency issues." *Hartman v. State*, 988 N.E.2d 785, 788 (Ind. 2013). We consider any uncontested evidence favorable to the defendant but will not reweigh the evidence and will resolve any conflicts in the evidence in favor of the trial court's ruling. *Pinner v. State*, 74 N.E.3d 226, 229 (Ind. 2017). Whether the facts, taken under this standard, establish the constitutional admissibility of evidence is a question of law that is reviewed *de novo*. *Hartman*, 988 N.E.2d at 788. The trial court's ruling on a motion to suppress will be sustained on any

reasonable basis apparent in the record. *Gibson v. State*, 777 N.E.2d 87, 89 (Ind. Ct. App. 2002), *trans. denied*.

[9] Graff makes three arguments to support his general contention that the trial court abused its discretion in denying his motion to suppress. First, Graff argues that his interactions with police violated his Indiana constitutional right against compelled self-incrimination. Second, Graff contends that his constitutional right to counsel was violated because the State did not provide him with an attorney before administering the polygraph examination. Finally, Graff contends that the State has failed to establish that his statements were made voluntarily.

## A.    Right Against Self-Incrimination

[10] Graff contends that his statements to police were obtained in violation of Article 1, Section 14, of the Indiana Constitution, which provides, in part, that "[n]o person, in any criminal prosecution, shall be compelled to testify against himself." As has been stated repeatedly by the Indiana Supreme Court, a defendant seeking to suppress self-incriminating statements must establish that they were compelled. On this point, Graff seems only to argue that any statement to police after a suspect has invoked his right to counsel but has not consulted with counsel should be considered compelled testimony. None of the authority on which Graff relies supports such a broad interpretation of the relevant constitutional language, and finding compulsion where no actual compulsion exists would run counter to the Indiana Supreme Court's interpretations of Article 1, Section 14.

[11]    The Indiana Supreme Court has cited the following definition of "compel":

"'to force or constrain ... to get or bring about by force[.]'" *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind. 1998) (citation omitted; ellipsis in *Ajabu*).  The *Ajabu* Court elaborated on the compulsion requirement:

> The decisional law as far back as 1860 has focused on the prerequisite of compulsion:  "[The right] exempts no one from the consequences of a crime which he may have committed, but only from the necessity of himself producing the evidence to establish it."  *Wilkins v. Malone*, 14 Ind. 153, 156 (1860).  Stated concisely, our cases establish that there is a right not to be forced to speak, but there is no right to bar a confession freely given after appropriate warnings and waivers.  *See also Corder v. State*, 467 N.E.2d 409, 415 (Ind. 1984) (defendant who spoke freely to court-appointed psychiatrists was not denied his rights under Section 14 or the Fifth Amendment); *Ross v. State*, 204 Ind. 281, 293, 182 N.E. 865, 869 (1932) ("The essence of the privilege is freedom from testimonial compulsion."); *cf. State ex rel. Keller v. Criminal Court of Marion County*, 262 Ind. 420, 428, 317 N.E.2d 433, 438 (1974) ("The Fifth Amendment is not a bar to any conviction resting on self-incrimination.  It prohibits only compelled self-incrimination.").

*Ajabu*, 693 N.E.2d at 930.

[12]    Suffice it to say that the record does not indicate that anything like compulsion occurred in this case.  It is worth noting that Graff has not even testified that he felt compelled to incriminate himself, so he would have us infer compulsion from the circumstances.  The record does not support such an inference.  Graff voluntarily came in to speak with police, voluntarily submitted to a polygraph examination, and voluntarily submitted to an interrogation, during which he incriminated himself.  During these official interactions, Graff was advised of

his rights several times and was repeatedly told that his participation was optional, he was not in custody, and he was free to leave at any time. While it is true that Graff expressed an interest in speaking with an attorney three days before the polygraph examination, he nonetheless appeared for and submitted to the examination, after *again* being told that he did not have to take it and being advised of his rights, which rights he subsequently waived. Because these circumstances do not establish that Graff's statements to police were compelled, he has failed to establish that his right against compelled self-incrimination was violated.

## B. Right to Counsel

[13] Graff argues that his right to counsel, as guaranteed by the United States and Indiana Constitutions, was violated during his polygraph examination and subsequent police interview. The Sixth Amendment to the United States Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right […] to have the Assistance of Counsel for his defence." Article 1, Section 13, of the Indiana Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall have the right […] to be heard by himself and counsel[.]" The Indiana Supreme Court has held that the "constitutional right […] to be heard by counsel contemplates his right to consult with counsel at every stage of the proceedings." *Suter v. State*, 227 Ind. 648, 657–58, 88 N.E.2d 386, 390 (1949). "A criminal suspect's right to counsel is a cornerstone of a fair trial, guaranteed by both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana State

Constitution." *State v. Taylor*, 49 N.E.3d 1019, 1024 (Ind. 2016). "These separate provisions extend similar protections—the right to counsel at any critical stage of a criminal proceeding 'where counsel's absence may derogate from the accused's right to a fair trial.'" *Id.* (quoting *Caraway v. State*, 891 N.E.2d 122, 126 (Ind. Ct. App. 2008)). However, "the Indiana right provides greater protection because it attaches earlier—upon arrest, rather than only when 'formal proceedings have been initiated' as with the federal right." *Id.* (quoting *Taylor v. State*, 689 N.E.2d 699, 703–04 (Ind. 1997)).

[14] As with his previous argument, Graff's argument regarding his right to counsel focuses on the Indiana Constitution. Graff cites our 2008 decision in *Caraway*, in which a panel of this court concluded that a pre-charge, pre-arrest polygraph examination was a critical stage on the basis that counsel's absence could imperil the defendant's right to a fair trial. 891 N.E.2d at 126. The State notes that there is a split on this particular point and argues that we should follow *Kochersperger v. State*, 725 N.E.2d 918 (Ind. Ct. App. 2000), in which we summarized prior Indiana cases and concluded that a pre-charge polygraph examination is not a critical stage. *Id.* at 924.

[15] We agree with the *Kochersperger* court that where a suspect has not "been arrested, arraigned, or indicted at the time […] the polygraph examination and post-testing interrogation were conducted, […] the examination and interrogation did not constitute critical stages of a criminal proceeding because criminal proceedings had not yet commenced[.]" *Id.* (citation omitted); *see also Callis v. State*, 684 N.E.2d 233, 238 (Ind. Ct. App. 1997) (concluding that

exclusion of defense attorney from polygraph examination and post-testing interview did not violate defendant's right to counsel on the basis that we must "distinguish between pre- and post-arrest/indictment proceedings"). In so doing, we believe we are doing no more than following clear precedent from the Indiana Supreme Court, whose rulings are absolutely binding on us.[3]

[16] The Indiana Supreme Court has repeatedly stated that, while Indiana's right to counsel is broader than the federal right, it attaches at arrest, which had not occurred when Graff submitted to the polygraph examination. *See, e.g.*, *Taylor*, 49 N.E.3d 1019 at 1024; *Taylor*, 689 N.E.2d at 703–04; *Suter*, 227 Ind. at 658, 88 N.E.2d at 390 ("We think it must be conceded that appellant had a right to have counsel when he was arrested[.]"); *and Batchelor v. State*, 189 Ind. 69, 77, 125 N.E. 773, 776 (1920) (in a case where officers repeatedly denied defendant's requests to consult with counsel while confined in jail awaiting arraignment, concluding "that appellant was denied the right to be heard by counsel as guaranteed by the letter and the spirit of our state Constitution"). There is no suggestion in any Indiana Supreme Court jurisprudence to date, however, that the right to counsel attaches at any point *prior* to arrest. Because Graff was not under arrest at the time he made the incriminating statements, he

---

[3] As we have recognized,

> We are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals*, 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. *Id*. While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*.

has failed to establish that his Indiana constitutional right to counsel had attached.[4]

## C.    Voluntariness of Statements

Finally, Graff contends that his statements to police should be suppressed because they were made involuntarily. The voluntariness of a defendant's statements is a separate inquiry from questions posed by the requirement for *Miranda* warnings. *Dickerson v. U.S.*, 530 U.S. 428, 444 (2000). "In assessing the voluntariness of a defendant's self-incriminating statement, we look to the totality of the circumstances to determine whether the statement was procured through 'coercion or other improper influence so as to overcome the free will of the accused.'" *State v. Jones*, 191 N.E.3d 878, 885 (Ind. Ct. App. 2022), (quoting *State v. Banks*, 2 N.E.3d 71, 81 (Ind. Ct. App. 2014), *trans. denied*), *trans. denied*.

"A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Shelby v. State*, 986 N.E.2d 345, 365 (Ind. Ct. App. 2013), *trans. denied*. "The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence." *Id*. The trial court's determination of voluntariness "is reviewed in

---

[4] To the extent that Graff argues that the written waiver to his right to counsel, which he executed prior to the polygraph examination, was involuntary, we need not address the question, as Graff's right to counsel had not yet attached.

the same way as other sufficiency matters." *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004) (citing *Griffith v. State*, 788 N.E.2d 835, 842 (Ind. 2003)).

[19] Factors considered in determining the voluntariness of a confession include the "crucial element of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health." *Shelby*, 986 N.E.2d at 365. The presence or absence of police coercion is the most significant factor, because the Fifth Amendment is not concerned "'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Colorado v. Connelly*, 479 U.S. 157, 170 (1986) (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)).

[20] Graff's argument in this regard is, essentially, to go through the polygraph examination and subsequent police interview and argue that various circumstances, such as the police acting consistently with the Reid interrogation technique, the length of the interview, the setting, etc., rendered his statements involuntary. For its part, the State notes that Graff chose not to testify about his perception of events and that, without Graff's testimony about coercion, any conclusion that he felt pressured by anything the police did would be based on pure speculation without support in the record. The State argues that Graff is, essentially, inviting the court to re-draw inferences against the State contrary to the relevant standard of review. *See, e.g.*, *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004) (stating that reviewing courts only look to whether the inferences supporting the trial court's judgment were reasonable, not whether other, "more reasonable" inferences could have been made).

On this point, we agree with the State. Whatever the circumstances under which Graff made his incriminating statements, they do not inexorably lead to an inference that his statements were made involuntarily. At every stage prior to his incriminating statements (including immediately prior to), Graff was advised that his participation was voluntary, he was free to refuse to speak to the police, he had the right to counsel, he had the right to remain silent, and (where relevant) he was free to go. There is no direct evidence of official deception, despite Graff's unsupported suggestion that police were lying when they told him that he had failed the polygraph examination. There is no evidence that Graff's maturity, education, physical condition, and/or mental health left him particularly susceptible to police coercion, much less that the police were aware of (and exploited) any such conditions. These circumstances, particularly in the absence of any evidence from Graff that his will was actually overcome by any alleged official impropriety, amply support the trial court's conclusion that Graff's statements were made voluntarily.

## II.   Motion in Limine

Graff contends that the trial court abused its discretion in granting the State's motion in limine, which was seeking to exclude evidence of the administration of the polygraph examination and any expert testimony related to it. "The granting of a motion in limine is a matter committed to the discretion of the trial court and an abuse of discretion must be demonstrated to justify reversal on appeal." *Ryan v. State*, 431 N.E.2d 115, 116 (Ind. 1982). An abuse of discretion occurs "only when the decision is clearly against the logic and effect

of the facts and circumstances" before the trial court. *Shinnock v. State*, 76 N.E.3d 841, 843 (Ind. 2017). Conclusions about the effect of relevant law, however, are reviewed *de novo*. *In re S.H.*, 984 N.E.2d 630, 633 (Ind. 2013). We will affirm the trial court on any reasonable basis apparent in the record, even if that basis was not relied on by the parties or the trial court. *Ramirez v. State*, 174 N.E.3d 181, 190 n.2 (Ind. 2021).

[23] Evidence of a polygraph test is inadmissible without a prior stipulation. *Myers v. State*, 887 N.E.2d 170, 191 (Ind. Ct. App. 2008) (citing *Glenn v. State*, 796 N.E.2d 322, 325 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. Graff, however, attempts to avoid the operation of this general rule by relying on the United States Supreme Court's decision in *Crane v. Kentucky*, 476 U.S. 683 (1986). In that case, the Kentucky state courts had denied the defendant's request to admit evidence of "the physical and psychological environment in which the confession was obtained" to show that his confession was "unworthy of belief." *Id*. at 684.

[24] The Court overruled the Kentucky Supreme Court, reasoning as follows:

> But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise ... unworthy of belief." [*Lego v. Twomey*, 404 U.S. 477, 485–86 (1972)]. Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent,

why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

*Crane*, 476 U.S. at 689. "In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing." *Id.* at 690–91 (quotation omitted). Graff argues that *Crane* and similar cases give him the right to present at least some evidence about his polygraph examination in support of his attempt to undermine the incriminatory value of his admissions to Detective Bridges.

On this point, we agree with Graff. It seems to us that matters related to Graff's polygraph examination are just the sort of evidence that concerned the *Crane* Court. Put another way, evidence that the polygraph examination directly preceded the confession, occurred in the exact same room, and involved the same officer to which the confession was given, easily qualifies as evidence regarding "the physical and psychological environment in which the confession was obtained." *Id.* at 684. Preventing Graff from presenting any evidence regarding the polygraph examination would deny him the chance to show that the circumstances surrounding it cast doubt on the credibility of his confession,

which was, as mentioned, given within minutes of the examination's completion.[5]

[26] Our conclusion is consistent with Indiana Rule of Evidence 106, which provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." The preliminaries to the polygraph examination, the examination itself, and the subsequent police interview are all part of one recorded statement, and fairness dictates that neither party should be able to decide that the jury will hear only the parts of the statement it deems favorable to its case.

[27] That said, we do not believe that we are in the best position to determine exactly how this issue is to be handled on remand. We conclude that Graff should be allowed to present evidence regarding the polygraph examination for the expressly limited purpose of giving the jury a fair and full account of the circumstances surrounding his confession. As for the exact contours of this presentation, we leave it to the trial court and parties to define them on remand.

---

[5] We are not persuaded by the State's argument that evidence regarding Graff's polygraph examination is not relevant to his incriminating statements because those statements were made after the examination. The two cannot be so cleanly separated. Graff made his incriminating statements within minutes of being informed that he had failed the polygraph examination. The examination and interview occurred in the same room, and there was no break between them. Any suggestion that the polygraph examination and police interview are completely unconnected is untenable.

We affirm the judgment of the trial court in part, reverse in part, and remand with instructions.

Bailey, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Michael C. Cunningham
Baldwin, Perry & Wiley, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana