**Thomas E. CARAWAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 47A01–0709–CR–416.**

Court of Appeals of Indiana.

July 31, 2008.

Rehearing Denied Oct. 3, 2008.

12. Based on the charging information, the reversed convictions would be counts 2, 6, 7, and 8.

Lorinda Meier Youngcourt, Huron, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant, Thomas E. Caraway (Caraway), appeals the trial court's denial of his Motion to Suppress and Exclude All Evidence of Polygraph Examination.

We reverse and remand for further proceedings.

### ISSUE

Caraway raises one issue on appeal, which we restate as: Whether the trial court erred in denying his motion to suppress when Caraway was not advised of his right to counsel prior to signing an Agreement to Take Polygraph and Stipulation of Admissibility (stipulation agreement).

### FACTS AND PROCEDURAL HISTORY

On April 14, 2004, A.L. could not locate her three-year-old-son, B.B. When A.L. went to Caraway's garage, which was located next door to her residence, she observed that B.B.'s pants were down and that Caraway had B.B.'s penis in his mouth. That same day, Detective Captain Robert Herr of the Bedford City Police Department (Detective Herr) was dispatched to investigate the allegations made by A.L. Detective Herr initially interviewed Caraway at the scene, and Caraway subsequently agreed to further conversation back at the police department. After Detective Herr took Caraway's statement at the police station, Caraway told Detective Herr that "he has trouble reading," and a dispatcher was summoned to witness Detective Herr read the statement back to Caraway before concluding the conversation. (Transcript pp. 70–71).

Nearly two months later, on June 5, 2004, Detective Herr returned to Caraway's residence and spoke to him. The two went out to the rear of Detective Herr's police cruiser and remained outside the vehicle while Detective Herr went through the stipulation agreement with Caraway, asking him to agree to take a polygraph examination. Because Caraway had difficulty reading, Detective Herr read the stipulation agreement to him, "down through the numbers [ ] as it appeared," and further explained to him that "it is an agreement between you and the prosecutor's office to allow the results of this test that we are getting ready to, for you to go and take, to [be] admitted in court." (Tr. pp. 72–73). The stipulation agreement provided that the polygraph results could not be admitted at trial without this stipulation, and it included a waiver to any objection Caraway may have regarding the admission of the results at trial. It did not mention or include a *Miranda* warning or notice of his right to counsel. Caraway signed the stipulation agreement at the scene, and the State and Detective Herr subsequently signed it as well.

On June 26, 2004, Detective Herr transported Caraway to the Indiana State Police Post in Jasper where the polygraph was to be administered. Prior to the examination, Detective Herr observed Indiana State Trooper Dan Gress (Trooper Gress) read to Caraway his *Miranda* warnings from a form, which included a notice of the right to seek the assistance of counsel. Caraway signed the *Miranda* warning and waiver form and Trooper Gress administered the polygraph.

On September 20, 2004, the State filed an Information, charging Caraway with child molesting, as a Class B felony, Ind. Code § 35–42–4–3. On May 22, 2006, the State amended the charging Information to include Count I, child molesting, as a

Class A felony, I.C. § 35–42–4–3(a); and Count II, child molesting, as a Class C felony, I.C. § 35–42–4–3(b). On June 21, 2007, Caraway filed a Motion to Suppress and Exclude All Evidence of Polygraph Examination. On July 17, 2007, the trial court conducted a hearing on Caraway's motion. On July 31, 2007, the trial court denied the motion. On August 3, 2007, Caraway filed a Motion to Continue for Purpose of Filing Interlocutory Appeal and to Appoint Co-Counsel to File Appeal, which was granted by the trial court. On August 29, 2007, the trial court certified its order for interlocutory appeal. On November 19, 2007, we granted Caraway's petition to accept jurisdiction of his interlocutory appeal.

Caraway now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Caraway argues the trial court improperly denied his motion to suppress. Our review of the denial of a motion to suppress is similar to other sufficiency matters. *Gonser v. State*, 843 N.E.2d 947, 949 (Ind.Ct.App.2006). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id.* On appeal, we will affirm the trial court's ruling on a motion to suppress if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Id.*

Disputing the trial court's decision, Caraway specifically contends that the State never gave him notice of his right to counsel when he stipulated to the polygraph. Without his counsel's signature on the stipulation agreement, or the opportunity to waive his right of counsel, he maintains that the agreement is invalid. The State

replies that the stipulation is valid because even though Caraway was not informed of his right to counsel before signing the stipulation, he was informed of that right by Trooper Gress prior to the actual examination.

The courts of this state have repeatedly expressed severe reservations about the reliability of polygraph results. *Willey v. State*, 712 N.E.2d 434, 441 (Ind.1999); *Madison v. State*, 534 N.E.2d 702, 704 (Ind.1989) ("the value of polygraph examinations is highly questionable ..."); *Reid v. State*, 267 Ind. 555, 372 N.E.2d 1149, 1152 (1978) ("in any given case, unreliable results may be produced in a polygraph test by influences that cannot be controlled or compensated for by a competent examiner"); *McVey v. State*, 863 N.E.2d 434, 440 (Ind.Ct.App.2007), *reh'g denied, trans. denied.* Because of its questionable reliability, we have adopted four prerequisites that must be met before the results of a polygraph examination can be admitted into evidence. In *Owens v. State*, 176 Ind. App. 1, 373 N.E.2d 913, 915 (1978) (citing *Arizona v. Valdez*, 91 Ariz. 274, 371 P.2d 894, 900 (1962)), we formulated these as follows:

(1) That the prosecutor, defendant, and defense counsel all sign a written stipulation providing for the defendant's submission to the examination and for the subsequent admission at trial of the results.

(2) That notwithstanding the stipulation, the admissibility of the test results is at the trial court's discretion regarding the examiner's qualifications and the test conditions.

(3) That the opposing party shall have the right to cross-examine the polygraph examiner if his graphs and opinion are offered in evidence; and

(4) That the jury be instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given such testimony.

*See also Sanchez v. State*, 675 N.E.2d 306, 308 (Ind.1996). The first prerequisite is the only one at issue in this case.

Both parties focus this court's attention on *Kochersperger v. State*, 725 N.E.2d 918 (Ind.Ct.App.2000). Kochersperger, who was under investigation regarding allegations of child molestation, met with detectives at the police department. *Id.* at 921. Although Kochersperger was not placed under arrest, detectives did review with Kochersperger an advice of rights form containing *Miranda* warnings, including an advisement of his right to counsel. *Id.* Kochersperger read and signed the advice of rights form, and the meeting culminated in Kochersperger signing an agreement with the prosecutor to undergo a polygraph examination; the agreement stipulated that the results of the examination would be admissible in any subsequent trial. *Id.* On the day of trial, Kochersperger raised a motion to suppress the polygraph examination results, but the motion was denied. *Id.* The jury found him guilty. *Id.*

On appeal, Kochersperger raised two arguments with regard to the polygraph examination. *Id.* at 922. First, Kochersperger contested the validity of the stipulation, as his defense counsel did not sign it. *Id.* However, we found that Kochersperger was fully advised of his right to counsel and waived that right. *Id.* at 922–23. Second, Kochersperger argued that his right to counsel under the Sixth Amendment was violated when the polygraph examination and post-testing interrogation were conducted without the presence of defense counsel. *Id.* at 923. Specifically, he urged that such examina-

tions and interrogations are "critical stages" of a criminal proceeding that necessarily trigger a defendant's Sixth Amendment right to counsel. *Id.* However, the *Kochersperger* court stated that the commencement of prosecution is governed by I.C. § 35–34–1–1 in which the filing of an information or indictment begins the formal criminal process. *Id.* (citing *Little v. State,* 475 N.E.2d 677, 683 (Ind.1985)). Because Kochersperger had not been arrested, arraigned, or indicted during the polygraph examination or interrogation, the court held that these periods did not constitute critical stages of a criminal proceeding, and thus, Kochersperger's right to counsel had not yet attached. *Kochersperger,* 725 N.E.2d at 924. In addition, the court clarified that an event occurring prior to the initiation of criminal proceedings may only be challenged on due process grounds, which is independent of any right to counsel claim. *Id.* (quoting *Callis v. State,* 684 N.E.2d 233, 238, n. 8 (Ind.Ct.App.1997), *trans. denied* ).

■ We disagree with the result reached in *Kochersperger* that the right to counsel cannot attach earlier than at the initiation of criminal proceedings. The Sixth Amendment to the United States Constitution guarantees the right to counsel at any critical stage of prosecution where counsel's absence may derogate from the accused's right to a fair trial. *U.S. v. Wade,* 388 U.S. 218, 226, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Williams v. State,* 555 N.E.2d 133, 136 (Ind.1990); *Hall v. State,* 870 N.E.2d 449, 460 (Ind.Ct.App.2007), *trans. denied.* It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State *at any stage of the prosecution, formal or informal, in court or out,* where counsel's absence might dero-

gate from the accused's right to a fair trial. *Wade,* 388 U.S. at 226, 87 S.Ct. 1926. In *United States v. Ash,* 413 U.S. 300, 313, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the Court examined the historical background and development of the Sixth Amendment right to counsel, concluding: "This review of the history and expansion of the Sixth Amendment counsel guarantee demonstrates that the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." The Supreme Court clarified in *Wade* that an accused's right to counsel has been extended to certain "critical" stages in criminal proceedings, because today's law enforcement machinery involves critical confrontations of the accused by the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial to a mere formality. *See Wade,* 388 U.S. at 224, 227, 87 S.Ct. 1926.

■ Under the Indiana Constitution, Article I, section 13, citizens are afforded even greater protection than by its federal counterpart. Section 13 states, in part:

> In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor.

Ind. Const. Art. I, § 13(a).

In *Hall,* we clearly stated that, as with the Sixth Amendment, Article I, Section 13 of the Indiana Constitution guarantees the right to counsel at any critical stage of the prosecution where counsel's absence might derogate from the accused's right to a fair

trial; however, "the rights afforded under Section 13 also attach prior to the filings of formal charges against the defendant." *Hall,* 870 N.E.2d at 460. Thus, precedents have often interpreted the Section 13 right expansively. *Malinski v. State,* 794 N.E.2d 1071, 1079 (Ind.2003) (quoting *Bolkovac v. State,* 229 Ind. 294, 98 N.E.2d 250 (Ind.1951) (recognizing an unqualified right to counsel in both felony and misdemeanor cases under section 13)).

In this case, the application of *Kochersperger* would derogate from the protections guaranteed by the Sixth Amendment and the Indiana Constitution. Here, the record reflects that Detective Herr came to Caraway's home and advised him to sign the stipulation agreement. The agreement provided that any objection to the admission of the polygraph results, answers, questions, and examiner's qualifications were waived. The agreement did not include *Miranda* warnings or any notice of right to counsel.

 Although Caraway was not arrested, arraigned, or indicted at the time he stipulated to the polygraph, he waived any objection to the admission of an unreliable form of potentially incriminating evidence. This can be nothing less than a critical stage. In *Escobedo v. Illinois,* 378 U.S. 478, 487–488, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the United States Supreme Court stated:

> The rule sought by the State here [ ] would make the trial no more than an appeal from the interrogation; and the right to use counsel at the formal trial would be a very hollow thing if, for all practical purposes, the conviction is already assured by pretrial examination. One can imagine a cynical prosecutor saying: Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial.

(Formatting altered). Thus, when a defendant finds himself in a critical stage, we cannot deny him his right to counsel simply because he has not been formally indicted yet.

 In sum, we conclude that Caraway's right to counsel attached immediately prior to Detective Herr's request to sign the stipulation agreement. Caraway had to stand alone against the State, and make a decision that may damage his defense at trial. At that critical stage, the absence of Caraway's right to an attorney derogated his right to a fair trial. Furthermore, as Caraway was never informed of his right to counsel prior to stipulating the results of a polygraph examination, he could not have waived it. Accordingly, we conclude that the trial court improperly denied Caraway's motion to suppress.

### CONCLUSION

We conclude that the trial court improperly denied Caraway's motion to suppress. Reversed and remanded.

BAKER, C.J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurring in result.

I respectfully concur in result. As stated by the United States Supreme Court in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* at 175, 111 S.Ct. 2204 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)).[1]

---

**1.** As the Court in *McNeil* made clear, there is a difference between the Sixth Amendment

Indiana case law following *Kochersperger* continues to acknowledge that the right to counsel does not attach until the initiation of criminal proceedings. *See Cox v. State,* 854 N.E.2d 1187, 1195 (Ind.Ct.App.2006) ("It is well settled that the Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against the defendant.") (quoting *Dullen v. State,* 721 N.E.2d 241, 242 (Ind.1999), *cert. denied,* 531 U.S. 847, 121 S.Ct. 118, 148 L.Ed.2d 73 (2000)); *Ackerman v. State,* 774 N.E.2d 970, 977 n. 9 (Ind.Ct.App.2002) (noting the "long recognized right of an accused in this state to have counsel at all critical stages following the point of arrest"); *Badelle v. State,* 754 N.E.2d 510, 537–38 (Ind.Ct.App. 2001) (noting that although an accused has a right to counsel under both the Sixth Amendment and Article I, section 13 of the Indiana Constitution at critical stages of the proceedings, "[w]e find no support for the assertion that the right to counsel can attach earlier than the initiation of criminal proceedings.") (quoting *Callis v. State,* 684 N.E.2d 233, 238 (Ind.Ct.App.1997)).

As a concurring judge in *Kochersperger,* I continue to believe that the right to counsel does not attach until criminal proceedings are initiated by the filing of an information or indictment. 725 N.E.2d at 923–24. I therefore cannot agree with the majority's conclusion that Caraway found himself at a critical stage when presented with the polygraph stipulation prior to any charges being filed against him. Nonetheless, Caraway should have been advised that he was entitled to the presence and advice of counsel for the Fifth Amendment purpose of avoiding self-incrimination during any custodial interrogation by police.

Unlike the defendant in *Kochersperger,* Caraway was not so advised prior to signing the stipulation that he would take a polygraph examination and that the results could be used at trial. *See Kochersperger,* 725 N.E.2d at 922–23 ("Kochersperger was fully advised of his right to counsel *prior to executing the stipulation* ... and waived such right by signing the advice of rights form") (emphasis added). The timing of the advice of rights is an important distinction between *Kochersperger* and this case. On the basis that Caraway was not advised of and did not waive his right to counsel before signing the stipulation, rather than on the basis of the Sixth Amendment, I agree that the trial court should have granted Caraway's motion to suppress, and I therefore concur in result.

right to counsel, which does not attach until "after the adverse positions of government and defendant have solidified," *id.* at 177–78, 111 S.Ct. 2204 (quotation and citation omitted), and the Fifth Amendment interest guaranteed by *Miranda,* which "attaches whether or not the 'adversarial relationship' produced by a pending prosecution has yet arisen," *id.* at 178, 111 S.Ct. 2204.