# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 18 2017, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Maurice Pringle,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 18, 2017

Court of Appeals Case No.
49A04-1612-CR-2680

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1609-CM-34947

**Bailey, Judge**

# Case Summary

[1] Following a bench trial, Maurice Pringle ("Pringle") was convicted of Battery Resulting in Bodily Injury, as a Class A Misdemeanor,[1] and Criminal Mischief, as a Class B Misdemeanor.[2] Pringle now appeals, raising the sole issue of whether the trial court failed to obtain a valid waiver of his right to counsel.

[2] We reverse and remand for a new trial.

# Facts and Procedural History

[3] On September 9, 2016, the State charged Pringle with (1) Domestic Battery, as a Class A Misdemeanor;[3] (2) Battery Resulting in Bodily Injury, as a Class A Misdemeanor; and (3) Criminal Mischief, as a Class B Misdemeanor. An initial hearing was held on September 22, 2016, at which Pringle confirmed that he had reviewed an initial rights form and understood those rights. The trial court then entered a plea of not guilty and appointed a public defender.

[4] A bench trial was scheduled on October 31, 2016. Before a trial commenced, Pringle's counsel requested a continuance because of exculpatory information that Pringle had recently communicated to her. This exchange ensued:

---

[1] Ind. Code §§ 35-42-2-1(c)(1), -1(d)(1).

[2] I.C. § 35-43-1-2(a).

[3] I.C. § 35-42-2-1.3(a)(1).

The Court:   So you didn't tell her at that time that you had pictures and stuff that would help you?

Mr. Pringle:   No. . . . We didn't really talk.  So, today she gave me a couple, some new information.  And I don't feel like she has a wide perspective on the case like I do, so I would like to either represent myself or get another attorney.

The Court:   I'm not giving you another public defender.  You're always welcome to-

Mr. Pringle:   Oh no, no.  I understand that.  That's good.

The Court:   You could always go hire an attorney.

Mr. Pringle:   Yeah.

Tr. Vol. III at 4-5.  The bench trial was ultimately continued until November 9, 2016, and Pringle remained represented by counsel.

[5]   Just before the scheduled trial, Pringle raised the subject of self-representation:

Mr. Pringle:   I want to represent myself, your Honor.

The Court:   Why?

Mr. Pringle:   [Because] I haven't been represented.

The Court:   Mr. Pringle, did you provide your lawyer with the evidence that you have?

Mr. Pringle: Yeah, . . . the evidence is . . . there's not evidence. . . . it's he did it against . . . I know I didn't do it. You know what I mean, I don't know what I need to give her, so . . .

The Court: You requested a continuance last week because you specifically had evidence that you said.

Mr. Pringle: No, the evidence is I'm innocent.

The Court: Okay.

Mr. Pringle: So I'm representing myself.

The Court: So, Mr. Pringle, that's fine, but you're having a trial today.

Mr. Pringle: Okay.

The Court: Do you understand that?

Mr. Pringle: That's fine.

The Court: Okay. So, I'll give him the paperwork to fill out, so . . . we'll set this back. I want you to review the paperwork to acknowledge that you understand that you are basically going to be an attorney for yourself. . . . That means that you . . . have to . . . conduct yourself as if you are an attorney.

Mr. Pringle: Okay.

> The Court: You'll review that information and I'm taking a recess. Just let me know when something is ready.

Tr. Vol. IV at 5-6.

After the recess, there was the following exchange:

> The Court: All right Mr. Pringle, have you filled out that paperwork?
>
> Mr. Pringle: No, ma'am.
>
> The Court: Why not?
>
> Mr. Pringle: [Because] I . . . can't understand, I can't really comprehend what's going on.
>
> The Court: You can't read or comprehend what's going on? Can you read and write the English language?
>
> Mr. Pringle: No, . . . not really, I can't.
>
> The Court: Did you ever tell me at any earlier time that you could read and write the English language?
>
> Mr. Pringle: No, . . . I don't remember you asking me that.

Tr. Vol. IV at 6-7. The trial court then had a recording played of the initial hearing, after which there was the following colloquy:

The Court: Thank you. So, was that you saying that you understand and read and write the English language sufficient enough to understand that document?

Mr. Pringle: Your Honor, I was saying I can't understand this.

The Court: That's basically--

Mr. Pringle: I can't comprehend.

The Court: --the same document, Mr. Pringle.

Mr. Pringle: Well, I mean, I understood what--

The Court: So, let me be clear: you just lied to this Court. Do you understand that?

Mr. Pringle: No, I don't understand any of it.

The Court: You just told this Court that you did not understand . . . you couldn't read and write, and now I have listened to that and you did tell me a month ago that you could read and write the English language.

Mr. Pringle: Your Honor, I was--

The Court: Yes or no.

Mr. Pringle: No, I stated that I can't comprehend this.

The Court: Great.

Tr. Vol. IV at 7-8.

[7] The trial court then stated that Pringle had been disrespectful in the past, and the trial court also expressed belief that Pringle was being "squirrely" by saying "a bunch of things to try to get out of th[e] [c]ourt hearing." Tr. Vol. IV at 9. The trial court then told Pringle:

> The Court:   You're not getting out of this [c]ourt [t]rial; we are having this [c]ourt [t]rial whether you are represented by Ms. Frick or represented by yourself. Do you understand that?
>
> Mr. Pringle: Yes, ma'am.
>
> The Court:   Okay. Are you representing yourself in this matter?
>
> Mr. Pringle: Yes, ma'am.
>
> The Court:   Great.

Tr. Vol. IV at 9. At this point, the State called the alleged victim, Brianna McCart ("McCart"), and the trial court noted Pringle's failure to sign the document concerning his right to counsel:

> The Court:   I will show that Mr. Pringle refuses to sign the document stating that he is--
>
> Mr. Pringle: I can't--

> The Court:  --representing himself, that he absolutely understands, reads and writes the English language sufficient enough to understand it.

Tr. Vol. IV at 9.

[8] After the State had begun questioning McCart, the trial court addressed Pringle's former counsel:

> The Court:  I'm sorry, give me just a second.  Ms. Frick, I know that you have been removed from the case.  I just want to make sure that you're paying attention in the event that Mr. Pringle has . . . a moment where he understands the gravity of the situation, requesting you represent him.
>
> Ms. Frick:  Yes, your Honor.

Tr. Vol. IV at 16.

[9] The State later sought to show exhibits to McCart, and the trial court asked Pringle if he had any objections, which led to this exchange:

> Mr. Pringle:  I'm like- I don't know what's- I don't even know what's- I'm lost here. . . .
>
> The Court:  You had a lawyer.  She's standing there, ready to go.  You can have the lawyer back.

Tr. Vol. IV at 23.  Pringle asked counsel to return and he was again represented.

[10]    When the State finished its examination of McCart, the trial court gave Pringle's counsel the opportunity to raise objections that she "would have lodged had [she] been . . . attorney at the table." Tr. Vol. IV at 29. The trial court stated that Pringle's counsel was not an "active participant in the first part of her testimony" but that she was listening. Tr. Vol. IV at 29. Counsel responded that it had been "a little bit hard for [her] to hear . . . from where [she] was sitting." Tr. Vol. IV at 29. Based on what counsel could recall, she raised two objections, which the trial court overruled.

[11]    At the conclusion of the bench trial, the trial court determined that Pringle was not guilty of Domestic Battery but otherwise guilty as charged, and the trial court sentenced Pringle. This appeal ensued.

# Discussion and Decision

[12]    Pringle contends that the trial court did not obtain a valid waiver of his right to counsel before he began representing himself. "We review de novo a trial court's finding that a defendant waived his right to counsel." *Jackson v. State*, 992 N.E.2d 926, 932 (Ind. Ct. App. 2013), *trans. denied*.

[13]    "A criminal suspect's right to counsel is a cornerstone of a fair trial, guaranteed by both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana State Constitution." *State v. Taylor*, 49 N.E.3d 1019, 1024 (Ind. 2016); *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his

defence."); Ind. Const. art. 1, § 13 ("In all criminal prosecutions, the accused shall have the right to . . . be heard by himself and counsel . . . ."). The separate constitutional "provisions extend similar protections—the right to counsel at any critical stage of a criminal proceeding 'where counsel's absence may derogate from the accused's right to a fair trial.'" *Taylor*, 49 N.E.3d at 1024 (quoting *Caraway v. State*, 891 N.E.2d 122, 126 (Ind. Ct. App. 2008)).[4]

[14]   In addition to conferring the right to counsel, both the Sixth Amendment and Article 1, Section 13 confer a conflicting right—the right to self-representation. *See Faretta v. California*, 422 U.S. 806, 832 (1975) (concluding that the language of the Sixth Amendment "necessarily implies the right of self-representation"); Ind. Const. art. 1, § 13 (providing the right to "be heard by himself").[5] "A request to proceed pro se is a waiver of the right to counsel, and consequently, there are several requirements to invoking the right of self-representation successfully." *Stroud v. State*, 809 N.E.2d 274, 279 (Ind. 2004). Indeed, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must

---

[4] The Indiana Constitution provides a broader right to counsel than the United States Constitution, but only in respects not germane to the instant appeal. *See, e.g.*, *Edwards v. State*, 902 N.E.2d 821, 828 (Ind. 2009) (listing several examples of the expanded right to counsel under the Indiana Constitution; *see also Jewell v. State*, 957 N.E.2d 625, 633-34 (Ind. 2011) (observing that Article 1, Section 13 provides broader protection "particularly in the context of invocation of the right and when the right attaches").

[5] Indiana precedent concerning Article 1, Section 13 generally "track[s] federal standards." *Edwards*, 902 N.E.2d at 828.

'knowingly and intelligently' forgo those relinquished benefits." *Faretta*, 422 U.S. at 835 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)). A defendant validly waives the right to counsel "when the defendant 'knows what he is doing and his choice is made with eyes open.'" *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942))).

[15] There is no "'rigid mandate setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary.'" *Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003) (quoting *Leonard v. State*, 579 N.E.2d 1294, 1296 (Ind. 1991)). However, before a defendant may proceed pro se, "he must be warned specifically of the hazards ahead." *Tovar*, 541 U.S. at 88-89. "The information that must be given 'will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Hopper v. State*, 957 N.E.2d 613, 618 (Ind. 2011) (quoting *Tovar*, 541 U.S. at 88).

> Courts determining whether a waiver of counsel for trial was made voluntarily and intelligently must consider (1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed pro se.

*Id*. Waiver of the right to counsel "should not be held lightly," *Stroud*, 809 N.E.2d at 281, and "courts will indulge every reasonable presumption against

waiver." *Jackson v. State*, 868 N.E.2d 494, 502 (Ind. 2007) (citing *Johnson*, 304 U.S. at 464); *see also Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind. 2001).

[16] Here, the record indicates that Pringle was given a form that included warnings about the risks of self-representation, and a recess was taken so that Pringle could read and complete the form. Pringle never completed the form and repeatedly stated that he did not understand the form. The trial court observed, based on Pringle's earlier representation, that Pringle had a sufficient command of the English language to understand the contents of the form. However, there is no indication that Pringle fully read the form given to him. Moreover, although the trial court characterized the initial rights form as containing similar content, the initial rights form only generally advised of the right to counsel and of deadlines that applied whether or not a defendant retained counsel. The trial court also orally advised Pringle that he would have to be an attorney for himself and conduct himself as though he was an attorney, but there is no indication that Pringle was acquainted with the dangers and disadvantages of self-representation. Moreover, there was limited inquiry into Pringle's background and experience, and his decision to proceed pro se.

[17] We recognize that the trial court suspected that Pringle was engaged in dilatory tactics, and courts must indeed be "wary of defendants asserting the right to represent themselves solely to delay proceedings or to create an issue for appeal." *Stroud*, 809 N.E.2d at 281. Yet, where a defendant fails or refuses to sign a written acknowledgment concerning waiver of the right to counsel—or even where the defendant signs such an acknowledgment—it is good practice to

make a record by orally advising the defendant of the dangers and disadvantages of self-representation.[6] Here, the record lacks sufficient indicia that Pringle knowingly and intelligently waived his right to counsel. Thus, we conclude that the trial court erred by permitting Pringle to proceed pro se.

[18] The State argues that the error is harmless. Not every affront to the right to counsel warrants reversal. Indeed, the United States Supreme Court has regularly approved of harmless-error analysis for Sixth Amendment violations involving the erroneous admission of particular evidence obtained in violation of a defendant's right to counsel. *See, e.g.*, *Satterwhite v. Texas*, 486 U.S. 249, 257-58 (1988) (collecting cases and holding that the harmless-error rule "applies to the admission of psychiatric testimony [obtained] in violation of the Sixth Amendment"). However, "[s]ome constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless. Sixth Amendment violations that pervade the entire proceeding fall within this category." *Id.* at 256. Moreover, the presence of counsel—unless validly waived—is a basic requirement of a fair trial. *See Rose v. Clark*, 478 U.S. 570, 579 (1986) ("Harmless-error analysis . . . presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge . . . ."); *Cf. U.S. v.*

---

[6] The Indiana Supreme Court has endorsed several guidelines for the advisement of a defendant, which are fully contained in the *Jones* opinion.

*Cronic*, 466 U.S. 648, 653-64 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."). Where federal constitutional error is reviewable for harmless error, "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967).

[19] The State argues that the constitutional violation is reviewable for harmless error because Pringle was eventually represented by counsel and the trial court undertook a curative measure by inviting counsel to retroactively object to portions of McCart's testimony. We disagree. Pringle was wholly deprived of counsel during most of the State's direct examination of McCart—a critical stage of the criminal proceeding. *See Bell v. Cone*, 535 U.S. 685, 696 (2002) (defining a critical stage as a step of a criminal proceeding that holds "significant consequences for the accused"); *Hernandez v. State*, 761 N.E.2d 845, 850 (Ind. 2002) (observing that a critical stage is any stage where the defendant is confronted with the intricacies of the law or the advocacy of the prosecutor). The instant deprivation of counsel amounted to structural error, which is not subject to harmless-error analysis.[7] *See Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (observing that "the total deprivation of the right to counsel at trial"

---

[7] Even if the error was reviewable for harmless error, we could not declare the error harmless beyond a reasonable doubt because Pringle's eventual counsel was unable to hear portions of the trial conducted while Pringle was representing himself. Thus, the trial court's attempted curative measure was inadequate, and it would be otherwise improper to engage in "unguided speculation," *Holloway v. Arkansas*, 435 U.S. 475, 491 (1978), about the direction the trial might or might not have taken.

constitutes a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards" because "[t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel"). We accordingly conclude that Pringle is entitled to a new trial.

# Conclusion

Pringle did not validly waive the right to counsel and he was improperly deprived of this right during a critical stage of the proceeding.

Reversed and remanded for a new trial.

Baker, J., and Altice, J., concur.